# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| OPTi INC. | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 2:10-CV-279-JRG |
| | § | |
| VIA TECHNOLOGIES, INC. and VIA | § | JURY TRIAL DEMANDED |
| TECHNOLOGIES, INC. (TAIWAN) | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

## OPTi INC.'S POST TRIAL BRIEF REGARDING VIA'S EQUITABLE DEFENSES OF LACHES AND ESTOPPEL

Michael L. Brody
J. Ethan McComb
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
mbrody@winston.com
emccomb@winston.com

Sam Baxter
Jennifer Truelove
**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
P.O. Box O
Marshall, Texas 75670
Phone: (903) 923-9000
Fax: (903) 923-9099

Taras A. Gracey
Robert G. Pluta
Thomas A. Rammer
**STEPTOE & JOHNSON LLP**
115 S. LaSalle Street
Suite 3100
Chicago, IL 60603
Telephone: (312) 577-1259
tgracey@steptoe.com
rpluta@steptoe.com

**ATTORNEYS FOR PLAINTIFF OPTi INC.**

I.     INTRODUCTION

VIA's entire laches and estoppel case rests on the testimony of Jiin Lai, designations from the deposition of Robert Harris, and exhibits proffered by Richard Donaldson. None of this evidence carries VIA's burden of proving laches under the *Aukerman* case. Nor does this evidence prove VIA's equitable estoppel theory. As shown below and in the attached Findings of Fact and Conclusions of Law (attached as Exhibit A), VIA failed to provide evidence of undue delay or prejudice as a result of OPTi bringing suit against VIA in 2010. For this reason alone, the Court should find that VIA failed to meet its burden under either its laches or estoppel theory. Nonetheless, even if VIA had met its evidentiary and legal burden, there is ample record evidence demonstrating that OPTi did not unreasonably delay bringing this lawsuit against VIA and that OPTi should not be estopped from recovering damages in this case.

II.    VIA FAILED TO MEET ITS BURDEN IN PROVING LACHES

   A.     The Proper Date For Laches Purposes is No Earlier Than 2005

VIA Technologies, Inc. and VIA Technologies, Inc. (Taiwan) (collectively "VIA") failed to present any evidence that the date for measuring laches should be any earlier than 2005. It is undisputed that the accused products were not launched until July of that year. (FOF ¶21).[1] OPTi Inc. ("OPTi") could not have possibly sued any earlier that 2005 on products which did not exist prior to that date. Only if the delay in filing suit exceeds six years does a court make a legal presumption that the underlying factors of laches are met. (COL ¶4). Accordingly, even if OPTi should have known of VIA's infringement as to other earlier products, the date of first infringement as to the products at issue in this case was within the six year period; as such, no presumption of laches applies. *Cf. Boston Scientific Corp. v. Cordis Corp.*, 777 F. Supp. 2d 783,

---

[1] Citations to the Findings of Fact are indicated by "FOF," and likewise citations to the Conclusions of Law are indicated by "COL."

1

792 (D. Del. 2011) (for hypothetical negotiation purposes, accused products are treated separately as to the date of first infringement, even where other previously accused products did not differ materially with respect to alleged infringing features).

### B. Even If The Presumption Applies, Any Delay By OPTi Was Excused

Even if the Court applies the presumption of laches, OPTi need only show a minimum quantum of evidence to burst the presumption of laches. (COL ¶6). As shown below, OPTi has provided overwhelming evidence justifying any delay in its bringing suit against VIA.

Virtually from the day that the patent-in-suit (U.S. Patent No. 5,710,906 ("the '906 Patent")) issued, OPTi has continuously pursued continuations of the '906 patent in the PTO, negotiated licensing terms with Pre-snoop infringers, litigated against Pre-snoop infringers who declined a license, and/or litigated against infringers of OPTi's other key patents (the "low-pin-count" or "LPC" patents). As shown in Figure 1 below (stipulated into evidence as a summary of the evidence in this case), (*see* Stipulated chart Dkt. No. 286, Exhibit A, June 6, 2013), OPTi's litigation and licensing activity was substantial, aggressive, and continuous from 1998 until 2010:



**Figure 1**

### 1. Prosecution of the Pre-snoop Patents

OPTi's Pre-snoop patent applications were continuously before the Patent Office from July 7, 1995 until June 11, 2002, when U.S. Patent No. 6,405,291 ("the '291 patent") issued. (FOF ¶2). As explained in *Meyers v. Asics Corporation*, it is reasonable for a patentee to wait for the issuance of related patents before initiating litigation, and therefore the laches clock here cannot begin any sooner than June 11, 2002, the issue date of the '291 Patent. 974 F.2d 1304, 1307 (Fed. Cir. 1992); (COL ¶10).

### 2. Negotiations with VIA

Between 1998 and July 2002, VIA and OPTi engaged in extensive negotiations (memorialized in multiple letters and emails throughout this period) regarding infringement of the '906 Patent by VIA's then current products. (FOF ¶3). Negotiations with the accused infringer do not count towards any laches time period. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1033 (Fed. Cir. 1992); (COL ¶9). The last correspondence during this negotiation period was a letter from VIA to OPTi on July 8, 2002. (FOF ¶3).

### 3. OPTi's Licensing and Litigation Activities

From July through September, 2002, OPTi engaged in negotiations with AMD and nVidia regarding the Pre-snoop patents. (FOF ¶¶6, 7). Also beginning in 2002, OPTi filed a series of lawsuits asserting various patents in its portfolio. The first was filed in 2002, when OPTi sued National Semiconductor alleging infringement of OPTi's LPC patents. (FOF ¶8). That case settled on June 26, 2003. (FOF ¶9). Between the National Semiconductor settlement and early 2004, OPTi searched for counsel. (FOF ¶10). After interviewing over twenty law firms over the course of about eighteen months (mid-2003 to late-2004), OPTi made the decision to hire Winston & Strawn, (*id.*), after which it reinitiated discussions with nVidia regarding licensing of OPTi's patents. (FOF ¶11). On October 19, 2004, OPTi sued nVidia alleging

3

infringement of the Pre-snoop patents and settled that case on August 3, 2006. (*Id.*). Even after the nVidia Settlement, OPTi had to spend another several years enforcing that agreement against nVidia in arbitration. (FOF ¶13). On November 15, 2006, OPTi sued AMD alleging infringement of the Pre-snoop patents. (FOF ¶13). On January 16, 2007, OPTi sued Apple alleging infringement of the Pre-snoop patents. (FOF ¶23). On July 3, 2007, OPTi then sued VIA, AMD, and six other defendants on the LPC patents. (FOF ¶24). Litigation continued until all of the defendants settled. AMD was the last LPC defendant to settle, and that occurred on April 30, 2010, which was the date the AMP Pre-snoop case also settled. (FOF ¶13). The current case was filed against the last known infringers—VIA and one other—on July 30, 2010. (FOF ¶27). Thus, the record is clear that OPTi was continuously engaged in litigation and licensing activities from 2002 through the filing of the present lawsuit.

Moreover, there can be no question that VIA was keenly aware of this litigation activity and deeply concerned that its time would come. VIA voluntarily aided AMD, one of OPTi's litigation adversaries in 2002 and again in 2006 by providing documentation to support the allegation that VIA's VT505 Chip ("the 505 Chip") was anticipating prior art to the '906 patent. (FOF ¶6). VIA also responded to a document and deposition subpoena in 2008 from AMD in the OPTi/AMD Pre-snoop litigation. (FOF ¶¶14, 15). Finally, when settling the LPC case, VIA asked for a license to the Pre-snoop patents—a request that OPTi denied—showing an ongoing awareness of the pending litigation. (FOF ¶24).

The case law is consistent in recognizing that litigation activity like OPTi's on facts like these is sufficient to "burst the bubble" of even presumed laches. (COL ¶8). OPTi's litigation and licensing activities between 2002 and 2010 excuse or toll any delay in bringing suit against VIA on the Pre-snoop patents. The point of the laches doctrine is to assure that patent owners do

4

not sleep on their rights. OPTi's record of continuous litigation against multiple litigants initiated immediately after its patents issued is exactly the opposite of the sort of conduct at which the laches doctrine is aimed, and VIA's knowledge of OPTi's activities, indeed, its active involvement in AMD's efforts to resist OPTi's licensing requests both before and after the AMD litigation was launched, confirms that VIA cannot have been lulled by OPTi's failure to sue. *See Hemstreet v. Computer Entry Sys. Corp.,* 972 F.2d 1290, 1293-1294, 1294 n.4 (Fed. Cir. 1992) (reversing summary judgment order notwithstanding 12 year delay from first knowledge, and more than six years of silence following threat of suit, because intervening litigation with third parties and "license-or-litigate pattern" of conduct excused delay); *see also Cedarapids, Inc. v. CMI Corp.,* 2000 WL 34030837, at *9-*10 (N.D. Iowa 2000) (litigation against third party on related patent sufficient to excuse delay where defendant asserting laches participated in discovery in prior suit); *Freeman* v. *Gerber Prods., Co.,* 466 F. Supp. 2d 1242, 1245, 1247 (D. Kan. 2006) (delay excusable where plaintiff licensed some third parties and sued at least one other, where defendant was aware of activity); *Rockwell Internat'l Corp.* v. *SDL, Inc.,* 103 F. Supp. 2d 1192, 1201 (N.D. Cal. 2000) (delay excused where plaintiff had sued a single infringer and engaged in licensing negotiations with others); *Accuscan, Inc.* v. *Xerox Corp.,* 1998 WL 273074, *6-*7 (S.D.N.Y. 1998) (seven year delay excused where plaintiff was engaged in another suit on asserted patent and defendant assisted in defense of earlier action by providing prior art to invalidate the asserted patent); (COL ¶8).

OPTi was not obligated to sue all infringers at once. *Imonex Servs., Inc.* v. *W.H Munzprufer Deitmar, Trenner GMBH,* No. 2:01CV174, 2003 WL 26095807, at *1 (E.D. Tex. Sept. 25,2003) (finding that given the expenses associated with patent litigation and the relative positions of the parties to the dispute, plaintiff's delay in filing the suit was not unreasonable);

5

*see also Studiengesellschaft Kohle, MBH* v. *Dart Indus., Inc.*, 549 F. Supp. 716, 757 (D. Del. 1982) ("[p]atentees are not required to pursue simultaneously every party suspected of infringing" to avoid laches); *cf PolymerTechs., Inc.* v. *Bridwell,* 103 F.3d 970, 975 (Fed. Cir. 1996) (noting in the context of irreparable harm, "[a] patentee does not have to sue all infringers at once."); (COL ¶11).  Hence, ultimately, somebody had to be sued first, and somebody had to be sued last.  If it had not been VIA it would have been someone else and, on VIA's theory, that defendant would have had a valid laches defense.  But if whoever ended up being last would have been in a position to assert laches, that is tantamount to saying that OPTi was obligated to sue everybody at once or, at least, to maintain multiple parallel lawsuits throughout this entire period.  The law simply does not impose any such obligation. (COL ¶11).  Thus, even if the laches presumption applies, OPTi has clearly presented sufficient evidence to justify its decisions.

        **C.**    **VIA Failed to Meet Its Burden to Show Material Prejudice**

Even if VIA can show OPTi unreasonably delayed in suing VIA, it still must show the delay operated to the material prejudice of VIA.  Prejudice can be either economic or evidentiary. (COL ¶12).  Here, VIA alleges no economic prejudice. (FOF ¶29).  Rather, VIA alleges evidentiary prejudice relating solely to supposed lost records relating to the 505 Chip.  However, VIA presented no evidence at trial of any such prejudice.  At trial, VIA claimed it suffered evidentiary prejudice because Mr. Renné, who died in 2008, allegedly would have had first-hand knowledge of VIA's unveiling of the 505 Chip in 1994 (allegedly prior to OPTi's date of invention).  In 1994, Mr. Renné was responsible for sales at VIA along-side Wen Chi, who is presently the CEO of VIA. (FOF ¶¶30, 31).  As one of VIA's founders, Mr. Lai, admitted at trial, Wen Chi would be available to testify as to these matters if VIA wanted to call him, and there was no evidence that Mr. Renné was even at VIA at the time OPTi allegedly should have

6

sued, and therefore there is no showing that OPTi's alleged delay caused prejudice on this point. (FOF ¶32).

Mr. Lai also testified that he lost his copy of a presentation that Tzu Mu, another VIA co-founder, presented at a PCI conference in 1993, and which was referenced in Mr. Lai's 2001 testing report. (FOF ¶33). Mr. Lai admitted that VIA does not know whether Tzu Mu still has a copy of the presentation that was given at the 1993 PCI conference, and that Tzu Mu was still a VIA employee and would be available to testify if VIA called him. (FOF ¶¶33, 34).

VIA was put on repeated and detailed notice that its then current products infringed the '906 and '291 patents throughout the 1998-2002 period. The 505 Chip was identified by VIA as alleged prior art from the outset of these discussions, and, indeed, was the centerpiece of the parties' negotiations. (FOF ¶3). Those negotiations focused on precisely the same issues that the parties litigated at trial: whether the 505 Chip actually performed in an anticipating manner, and whether it was invented, on sale, or publicly used in the U.S. at the relevant time. (*Id.*). Thus, if there was indeed evidence material to the validity of these patents in VIA's possession when these discussions ended in 2002, and if VIA thereafter permitted or caused that evidence to be destroyed, it did so in full knowledge of the evidentiary risk that it was running. Moreover, OPTi specifically asked VIA for documentation of its prior invention claim and pointed out the deficiencies in the documentation produced. (FOF ¶4). VIA actively collected documentation to help AMD in 2002 and 2006. (FOF ¶6). There is no basis in the record for inferring that VIA overlooked any documents which existed at the relevant time when it conducted these searches. To the contrary, the testimony of Melody Chao was that VIA's inability to locate relevant documents in its database meant that such documents likely did not exist. (FOF ¶16).

7

Conclusory allegations of evidentiary prejudice are insufficient to show laches. *Meyers*, 974 F.2d at 1308; (COL ¶13). VIA must show that the evidence was available at the start of the delay period, the loss of which would have been avoided had OPTi not delayed in filing suit, and which was material to VIA's defense. *See James River Corp. of Va. v. Hallmark Cards, Inc.*, 915 F. Supp. 968, 979-81 (E.D. Wis. 1996) (rejecting summary judgment claims of evidentiary prejudice as to lost prior art records); (COL ¶14). VIA has not only failed to present any such evidence, the record is to the contrary.

Ultimately, there is no reason to believe that any material evidence was lost after 2002. Between 1998 and 2002, VIA was asked to provide and provided OPTi with extensive documentation concerning the operation and alleged U.S. public use of the 505 Chip. (FOF ¶3). There is no reason to believe, and VIA presented no evidence supporting the contention, that prior to 2002 VIA had the evidence which it now claims is critical to its case, but that it held that evidence back during its negotiations with OPTi. Consequently, there is no basis to believe that such evidence, if it ever existed, was lost during—let alone as a result of—OPTi's alleged delay.

Likewise, in 2002, after being contacted by OPTi about the Pre-snoop patents, AMD contacted VIA to ask that VIA search for the records that VIA now speculates may have been lost after 2002; namely, records showing when the 505 Chip launched as a commercial product and when it went on sale in this country. (FOF ¶6). The materials collected in response to that request were preserved by AMD, produced in prior litigation between AMD and OPTi, and they are part of the record in this case. Moreover, in 2008 VIA was subpoenaed by AMD seeking any additional documents relating to the 505 Chip. (FOF ¶14). According to the testimony of VIA's 30(b)(6) witness, VIA searched databases from 1993 and 1994 that were maintained pursuant to VIA's document retention policy and which would have listed the allegedly missing records if

8

they had ever existed, but found nothing. (FOF ¶16). She testified that this meant that such documents likely never existed. (*Id.*) The VIA witness also interviewed key VIA personnel including the 505 Chip's alleged designer, Chad Tsai. (*Id.*) However, not only had they not retained any documents relevant to the 505 Chip, they had no independent recollection of the 505 Chip. (*Id.*) There is simply no reason to believe that evidence which VIA speculates may have existed, and which it repeatedly searched for but did not find in 1998, 2000, 2002, and 2008, would have miraculously been available had OPTi sued earlier.

The sole tangible pieces of evidence relating to the 505 Chip that VIA claims, in their summary judgment briefing but not at trial, to have been lost during this period are a tape of the 505 Chip's source code, testing done in 2000 on a board containing a 505 Chip, sales records, and design documents. However, an intact version of the 505 Chip source code dating from January 1994, prior to OPTi's earliest date of invention, exists and has been extensively relied on by VIA in this case. (FOF ¶17). As for the missing testing, the test results were produced to OPTi in 2000, retained by OPTi, and all of the records were provided to the PTO. VIA introduced the board on which this testing was performed as an exhibit at trial, and its expert ultimately replicated that testing, and in fact brought it to trial to use for a demonstration to the jury. (FOF ¶18). Therefore, VIA has not proved any prejudice.

### III. VIA FAILED TO MEET ITS BURDEN TO PROVE ITS EQUITABLE ESTOPPEL DEFENSE

Equitable estoppel applies where (1) the patentee, through misleading conduct, caused the infringer to reasonably believe that the patentee did not intend to enforce its patent against the infringer; (2) the alleged infringer reasonably relied on this conduct; and (3) due to its reliance, the alleged infringer would be materially prejudiced if the patentee were permitted to proceed with its charge of infringement. *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1371

9

(Fed. Cir. 2001) (citing *Scholle Corp. v. Blackhawk Molding Co.*, 133 F.3d 1469, 1473 (Fed. Cir. 1998)). VIA presented absolutely no evidence of estoppel at trial. As such, its unsupported equitable estoppel argument should be rejected. (*See* FOF ¶25; COL ¶16).

Respectfully submitted,

/s/ Sam Baxter

Sam Baxter
**MCKOOL SMITH, P.C.**
104 East Houston Street, Suite 300
P.O. Box O
Marshall, Texas 75670
Phone: (903) 923-9000
Fax: (903) 923-9099

Taras A. Gracey
Robert G. Pluta
Thomas A. Rammer
**STEPTOE & JOHNSON LLP**
115 S. LaSalle Street
Suite 3100
Chicago, IL 60603
Telephone: (312) 577-1259
tgracey@steptoe.com
rpluta@steptoe.com

Michael L. Brody
J. Ethan McComb
**WINSTON & STRAWN LLP**
35 West Wacker Drive
Chicago, Illinois 60601
Telephone: (312) 558-5600
mbrody@winston.com
emccomb@winston.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on this 7th day of June, 2013.  Any other counsel of record will be served by facsimile transmission and first class mail.

/s/ *Robert G. Pluta*