IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| OPTI INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SILICON INTEGRATED SYSTEMS | § | CIVIL ACTION NO. 2:10-CV-00279 |
| CORP., SILICON INTEGRATED | § | |
| SYSTEMS CORP. (TAIWAN), VIA | § | |
| TECHNOLOGIES, INC., AND VIA | § | |
| TECHNOLOGIES, INC. (TAIWAN), | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants VIA Technologies, Inc. and VIA Technologies, Inc.'s (Taiwan) (collectively "VIA") claim of laches and equitable estoppel. Plaintiff OPTi Inc. ("OPTi") brought suit against VIA alleging infringement of United States Patent Nos. 5,710,906 ("the '906 Patent") and 6,405,291 ("the '291 Patent"). On January 15, 2013, the Court granted the parties' joint motion to dismiss all claims and counterclaims regarding the '291 Patent. (*See* Dkt. No. 166.) At trial, OPTi alleged infringement of only Claim 26 of the '906 Patent. VIA contended that, *inter alia*, Claim 26 is invalid and that OPTi's claims for damages are barred by laches, equitable estoppel, or both. (*See generally* Dkt. No. 262.)

The Court conducted a jury trial in May 2013, on the issues of infringement and invalidity. At the conclusion of the jury trial, the Court held a non-jury trial to hear further evidence presented solely with respect to VIA's claim of laches and equitable estoppel. The parties submitted their post-trial briefing on laches and equitable estoppel after the bench trial. (*See* Dkt. Nos. 287, 288.) The Court having considered the same now makes and enters the

following findings of fact and conclusions of law relating to VIA's assertion of the defenses of laches and equitable estoppel:

**I. FINDINGS OF FACT**

1. The '291 Patent issued on June 11, 2002, and is a continuation of the '906 Patent (collectively "the Pre-Snoop Patents"). (PTX016.)

2. The Pre-Snoop Patent applications were continuously before the Patent Office from July 7, 1995 until June 11, 2002, when the '291 Patent issued. (PTX016; 5/31/13 Trial Tr. (PM) at 39:20-40:9 (Marren).)

   **a. Negotiations Between VIA and OPTi from 1998 through 2002**

3. On December 18, 1998, OPTi sent VIA a letter, wherein OPTi stated its belief that VIA may be manufacturing, using, selling and/or offering for sale products covered by the '906 Patent. (JTX043 at 2.) In support, OPTi stated that the data sheets for certain products indicated that those products perform "PCI master snoop ahead and snoop filtering." (*Id.* at 2.)

4. On August 11, 2000, OPTi sent VIA a letter, wherein OPTi stated its belief that "VIA products which use 'snoop ahead' infringe one or more patent claims" of the '906 Patent or U.S. Patent No. 5,813,036. (JTX045 at 1.) The letter states that "unless settlement can be reached in a timely fashion, OPTi will file suit against VIA and/or VIA's U.S. customers." (JTX045 at 2.)

5. In 2001, Mr. Jiin Lai, VIA's Chief Technology Officer, drafted a report entitled "Prior Art Based on the VIA505" (the "2001 Report"), which explains VIA's position that the 505 Chip invalidates the '906 Patent. (JTX008; DTX428; 5/29/13 Trial Tr. (PM) at 67:19-69:17 (Lai).) VIA faxed OPTi the 2001 Report on February 6, 2001. (DTX428 at 1; 5/29/13 Trial Tr. (PM) at 67:19-69:17 (Lai).) In the fax, VIA states that the report "conclusively prove[d]

that VIA published and was practicing the '906 invention more than one year prior to the '906 patent filing by OPTi." (DTX428 at 2; *see also* 5/29/13 Trial Tr. (PM) at 69:7-11 (Lai).)

6. On June 24, 2002, OPTi sent VIA a letter stating that OPTi cited the VIA prior art in a continuation application resulting in the issuance of the '291 Patent. (JTX051 at 1.) The letter further states that the VIA products listed in the products listed in the August 11, 2000 letter infringe the Pre-Snoop Patents, as do "any other VIA products using the 'pre-snoop' or 'snoop-ahead' feature." (*Id.*)

7. On July 8, 2002, VIA sent OPTi a letter stating that VIA was currently reviewing the '291 Patent and would contact OPTi in the event that VIA determined further discussion was necessary. (JTX052 at 1.) This was the final correspondence between the parties. (*See* 5/28/13 Trial Tr. (PM) at 48:23-49:17, 49:18-50:1 (Marren).)

   **b. OPTi's Licensing and Litigation Activities From 2002 Through the Filing of this Suit**

8. From July 2002 through September 2002, OPTi engaged in negotiations with AMD regarding the Pre-Snoop Patents. (PTX191; PTX480.)

9. During 2002, OPTi engaged in negotiations with nVidia regarding the Pre-Snoop Patents. (JTX053.)

10. On April 30, 2002, OPTi sued National Semiconductor for patent infringement. (PTX481.)

11. On June 26, 2003, OPTi and National Semiconductor entered into an agreement that settled the litigation between the two companies. (PTX126.)

12. After the National Semiconductor case, OPTi sought new counsel, interviewing over twenty law firms from mid-2003 to late 2004, and eventually retaining Winston & Strawn. (5/31/13 Trial Tr. (PM) at 41:24-42:16 (Marren).)

3

13. After retaining new counsel, OPTi reinitiated negotiations with nVidia regarding licensing of the Pre-Snoop Patents. (JTX054.) On October 19, 2004, OPTi filed suit against nVidia alleging infringement of the Pre-Snoop Patents. (PTX482.) OPTi and nVidia settled that case on August 3, 2006. (JTX057.) OPTi then enforced the agreement in arbitration against nVidia, lasting until the fall of 2008. (PTX245; DTX365; 5/28/13 Trial Tr. (PM) at 77:14-78:4 (Mazzoni).)

14. On November 15, 2006, OPTi sued AMD alleging infringement of the Pre-Snoop Patents. (PTX483.) Litigation continued until the case settled on April 30, 2010. (JTX058.)

15. On January 16, 2007, OPTi sued Apple alleging infringement of the Pre-Snoop Patents. (PTX484.) That case settled on December 6, 2010, after a jury rendered a verdict in favor of OPTi. (JTX059.)

16. On July 3, 2007, OPTi then sued VIA, AMD, and six other defendants on its "LPC" patents. (PTX050; DTX344; DTX345.) That case settled on October 1, 2009. (PTX050; DTX344; DTX345.)

17. During settlement discussions regarding the LPC case, VIA asked OPTi for a license to the Pre-Snoop Patents, but OPTi refused. (5/28/13 Trial Tr. (PM) at 65:7-17 (Marren).) Instead, OPTi stated in the agreement:

> OPTi represents and warrants that, as of the Effective Date, it has not evaluated the Accused VIA Products to determine the likelihood that they infringe any of the claims of [the Pre-Snoop Patents] and, for that reason, that OPTi has no current basis for believing that any of the Accused VIA Products infringe any claim of any Pre-snoop Patents.

(PTX050; DTX344 at 3-4; 5/28/2013 Trial Tr. (PM) at 58:8-25 (Marren).)

18. OPTi filed the above-styled action against VIA and one other defendant on July 30, 2010. (Dkt. No. 1.)

19. OPTi was continuously engaged in licensing and litigation activities from 2002 through the

4

filing of the above-styled action.  (Dkt. No. 286, Exh. A (Stipulated Exhibit).)

### c. OPTi's Pre-Snoop Patents Suit Against VIA

20. Pursuant to a 2003 agreement settling an unrelated patent infringement lawsuit, Intel required that VIA change the design of the system bus of its chipsets.  (5/29/13 Trial Tr. (PM) at 87:9-89:1 (Marren); 5/29/2013 Trial Tr. (PM) 168:1-6 (Gaskin).)  VIA shipped the first of these redesigned chipsets on July 27, 2005.  (PTX458.)

21. OPTi's infringement and invalidity expert Dr. Alan Smith relied, in part, upon statements appearing in the data sheets for the VIA CN700, CN800, CN896, P4M900, VT8237A, VT8237R+, VT8237S, VT8251, CX500, CX700M, CX700M2, VX700, VX800, VX800U, VX800UT, VX820, VX820U, VX855, VX900, VX900H, and VX900M North Bridge, South Bridge, and All-in-One products (the "Accused Products") as a basis for his opinion that the Accused Products infringe.  (5/28/2013 Trial Tr. (PM) at 185:13-18, 202:3-203:7 (Smith).)  Dr. Smith reads the statements "PCI master snoop ahead and snoop filtering" and "zero wait state PCI master slave burst transfer rate" to mean that the Accused Products infringed.  (*Id.* at 148:20-149:6.)

22. Every VIA North Bridge, South Bridge, and All-in-One data sheet published by VIA since 1996 contains the statements "PCI master snoop ahead and snoop filtering" and "zero wait state PCI master slave burst transfer rate."  (DTX217; 5/30/2013 Trial Tr. (PM) at 17:14-18:14 (McAlexander); 5/28/2013 Trial Tr. (PM) at 148:20-149:6 (Smith).)

### d. Evidence Regarding the 505 Chip

23. The 2001 Report references a paper (the "1993 Paper") presented by VIA at a PCI conference in 1993 (the "1993 PCI Conference").  (DTX428 at 3; 5/31/2013 Trial Tr. (PM) at 11:10-17 (Lai).)

24. The 2001 Report states that the 1993 Paper describes the 505 Chip. (DTX428 at 3.)

25. Dr. Tzu Mu, a VIA employee, presented the 1993 Paper at the 1993 PCI Conference. (5/31/13 Trial Tr. (PM) at 11:22-12:1 (Lai).)

26. Mr. Lai does not know whether Dr. Tzu Mu still has a copy of the presentation that was given at the 1993 PCI conference. (*Id.* at 29:23-30:3.)

27. Dr. Tzu Mu would be available to testify if VIA called him. (*Id.* at 29:13-22.)

28. Mr. Lai believes VIA offered the 505 Chip for sale in March of 1994 and that VIA's first customer was FIC. (*Id.* at 20:5-11.)

29. Wen Chi and Richard Renné would have knowledge of VIA's sales efforts in 1994. (*Id.* at 25:16-26:9.)

30. Mr. Renné passed away on March 24, 2008. (Dkt. No. 257 at 14; 5/31/2013 Trial Tr. (PM) at 18:9-13 (Lai).)

31. Mr. Wen Chi is presently the CEO of VIA. (5/31/2013 Trial Tr. (PM) at 28:22-29:1 (Lai).) Mr. Wen Chi would be available to testify if VIA wanted to call him as a witness. (*Id.* at 29:2-4.)

## II. CONCLUSIONS OF LAW

### a. Jurisdiction

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2. This action arises under the Patent Laws of the United States, 35 U.S.C. § 1, et seq.

3. Accordingly, the Court must apply the precedents of the United States Court of Appeals for the Federal Circuit, which has jurisdiction over any appeal of this judgment. 28 U.S.C. § 1295(a).

### b. Laches

#### i. Applicable Law

4. The owner of a patent may not be entitled to recover damages for acts that occurred before it filed a lawsuit where: (1) the patentee delayed filing the lawsuit for an unreasonably long and inexcusable period of time, and (2) the alleged infringer has been or will be prejudiced in a significant way due to the patentee's delay in filing the lawsuit. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1032 (Fed. Cir. 1992) (en banc).

5. The alleged infringer must prove delay and prejudice by a preponderance of the evidence. *Aukerman*, 960 F.2d at 1045.

6. If suit was delayed for six years, a rebuttable presumption arises that the delay was unreasonable and unjustified, and that material prejudice resulted. *Aukerman*, 960 F.2d at 1034-35. This presumption shifts the burden of proof to the patentee to come forward with evidence to prove that the delay was justified or that material prejudice did not result. *Id.* Such evidence "must be sufficient to put the existence of a presumed fact into genuine dispute." *Id.* at 1037. If the patentee presents such evidence, then the burden of proving laches remains with the alleged infringer. *Id.* at 1037-38.

7. Facts and circumstances that can justify a delay can include, during the period of delay: (1) being involved in other litigation; (2) being involved in negotiations with the alleged infringer; (3) poverty or illness; (4) wartime conditions; (5) being involved in a dispute about ownership of the patent; or (6) minimal amounts of allegedly infringing activity by the alleged infringer. *Aukerman*, 960 F.2d at 1033.

8. Material prejudice may be economic or evidentiary. *Aukerman*, 960 F.2d at 1043. Economic prejudice is determined by whether or not the alleged infringer changed its economic position

7

in a significant way during the period of delay resulting in losses beyond merely paying for infringement and also whether the alleged infringer's losses as a result of that change in economic position likely would have been avoided if the patentee had filed this lawsuit sooner. *Aukerman*, 960 F.2d at 1033. Evidentiary prejudice "may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Aukerman*, 960 F.2d at 1033 (citations omitted).

> ii. *The Court Concludes that VIA Has Not Proven by a Preponderance of the Evidence that Laches Limits OPTi's Damage*

9. Based on the findings of fact and applicable legal standards discussed above, the Court finds that the doctrine of laches does not limit OPTi's recovery of damages.

10. Regarding laches, the Court does not address whether the proper date for measuring laches is 1998, the year VIA alleges OPTi knew of VIA's alleged infringement, or 2005, the year VIA first launched the accused products. To the extent that OPTi delayed suit for six years or more, the Court finds that OPTi has rebutted the presumption that such delay was unreasonable and that material prejudice resulted. Between 1998 and July of 2002, VIA and OPTi engaged in negotiations regarding VIA's then current products. Findings of Fact ¶¶ 3-7. The negotiations focused on the same invalidity issue that the parties litigated at trial, namely, whether VIA's 505 Chip actually performed in an anticipating manner, and whether it was invented, on sale, or publicly used in the U.S. at the relevant time. *Id.* From 2002 through the filing of the present suit, OPTi was continuously engaged in licensing and litigation activities. *Id.* at ¶¶ 8-19. The Court finds that OPTi's evidence of involvement in negotiations with VIA and involvement in other litigation and licensing activities is sufficient

to put the existence of any presumed delay into genuine dispute. The burden of proving laches by a preponderance of the evidence remains with VIA.

11. VIA has not proved by a preponderance of the evidence that it has been materially prejudiced by any alleged delay. VIA alleges that it has suffered evidentiary prejudice including the loss of documentary evidence of the design and development of the 505 Chip, and the death of Mr. Renné who would have explained that the 505 Chip was offered for sale in the United States in the spring of 1994. The documents allegedly lost include the 1993 Paper that Dr. Tzu Mu presented at a conference. *Id.* at ¶¶ 23-25. While Mr. Lai testified that he lost a copy of the 1993 Paper, he also testified that he did not know whether Dr. Tzu Mu retained a copy of the paper. *Id.* at ¶ 26. VIA could have called Dr. Tzu Mu to testify, *id.* at ¶¶ 25, 27, but did not. VIA's argument regarding Mr. Renné similarly fails. Mr. Wen Chi, a current VIA employee who could have been called to testify but was not, would also have knowledge of VIA's sales activity in 1994. *Id.* at ¶ 29-31. Accordingly, the Court finds that VIA has not proved by a preponderance of the evidence that it had been materially prejudice by any alleged delay.

    **c. Equitable Estoppel**

        *i. Applicable Law*

12. The owner of a patent may forfeit its right to any relief from an infringer where: (1) the patentee, through misleading conduct, leads the alleged infringer to reasonably infer that the patentee does not intend to enforce its patent against the alleged infringer; (2) the alleged infringer relies on that conduct; and (3) the alleged infringer will be materially prejudiced if the patentee is allowed to proceed with its claim. *Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1130 (Fed. Cir. 2013) (citing *Aukerman*, 960 F.2d at 1028).

13. The alleged infringer must prove each of these elements by a preponderance of the evidence, but even if all these elements are proven, equitable estoppel need not be found if such a finding would be unfair in light of the conduct of the parties. *Aukerman*, 960 F.2d at 1045-46.

14. "Misleading 'conduct' may include specific statements, action, inaction, or silence when there was an obligation to speak." *Aspex Eyewear Inc. v. Clariti Eyewear, Inc.*, 605 F.3d 1305, 1310 (Fed. Cir. 2010) (citing *Aukerman*, 960 F.2d at 1028).

15. To show reliance, the alleged infringer must demonstrate that, "in fact, it substantially relied on the misleading conduct of the patentee in connection with taking some action. . . . To show reliance, the infringer must have had a relationship or communication with the plaintiff which lulls the infringer into a sense of security in going ahead with building the [infringing product]." *Aukerman*, 960 F.2d at 1042-43.

16. Material prejudice may be economic or evidentiary. *Aukerman*, 960 F.2d at 1043. Economic prejudice "may be shown by a change of economic position flowing from actions taken or not taken by the patentee." *Aspex Eyewear*, 605 F.3d at 1312-13 (citing *ABB Robotics, Inc. v. GMFanuc Robotics Corp.*, 52 F.3d 1062, 1065 (Fed. Cir. 1995) ("[C]ases in which economic prejudice has been found lacking did not so hold because of a lack of capital investments, but, rather, because the alleged infringer failed to prove that their increased expenditures, i.e., on marketing and development, were in any way related to actions taken by the patentee.")). Evidentiary prejudice "may arise by reason of a defendant's inability to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Aukerman*, 960 F.2d at 1033 (citations omitted).

17. The Court must consider all evidence relevant to the equities. *Radio Sys. Corp.*, 709 F.3d at 1310 (citing *Aukerman*, 960 F.2d at 1028).

> ii. *The Court Concludes that VIA Has Not Proven by a Preponderance of the Evidence that Equitable Estoppel Bars OPTi's Damages*

18. Based on the findings of fact and applicable legal standards discussed above, the Court finds that the doctrine of equitable estoppel does not bar OPTi's recovery of damages.

19. With respect to equitable estoppel, VIA has not proved by a preponderance of the evidence that it substantially relied on any allegedly misleading conduct of OPTi in connection with taking some action. On the contrary, far from being "lull[ed] . . . into a sense of security," *Aukerman*, 960 F.2d at 1042-43, VIA sought to clarify OPTi's position the year prior to the initiation of the present suit when it asked OPTi for a license to the patent-in-suit. Findings of Fact ¶¶ 16-17. OPTi clearly stated in response that it had not evaluated any of the VIA products accused in the LPC suit to determine the likelihood that they infringe any of the Pre-Snoop Patents. *Id.* The Court therefore finds that VIA has not proved by a preponderance of the evidence that it substantially relied on any allegedly misleading conduct of OPTi in connection with taking some action.

20. For the same reason, the Court finds VIA's claim of economic prejudice lacking, "[not] because of a lack of capital investments, but, rather, because [VIA] failed to prove that their increased expenditures . . . were in any way related to actions taken by the patentee." *Aspex Eyewear*, 605 F.3d at 1312-13 (citing *ABB Robotics, Inc.*, 52 F.3d at 1065). Accordingly, the Court finds that VIA has not proved by a preponderance of the evidence that it was materially prejudiced by any alleged misleading conduct by OPTi.

### III. CONCLUSION

For the reasons set forth above, the Court finds that VIA has not demonstrated by a preponderance of the evidence that OPTi's recovery of damages should be limited by laches or equitable estoppel. Accordingly, judgment shall be entered in favor of OPTi and against VIA on the issues of laches and equitable estoppel.

**So ORDERED and SIGNED this 19th day of August, 2013.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE